1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   ERIC ANGEL THOMAS,           )  Civil No. 07cv2257-IEG (BLM)
                                   )
12                 Petitioner,     )
                                   )  **REPORT AND RECOMMENDATION FOR**
13   v.                            )  **ORDER DENYING PETITION FOR**
                                   )  **WRIT OF HABEAS CORPUS**
14   M.C. KRAMER, Warden,          )
                                   )
15                 Respondent.     )
     ───────────────────────────   )
16

17        This Report and Recommendation is submitted to United States

18   District Judge Irma E. Gonzalez pursuant to 28 U.S.C. § 636(b) and

19   Local Civil Rules 72.1(d) and HC.2 of the United States District

20   Court for the Southern District of California.

21        On November 29, 2007, Petitioner Eric Angel Thomas, a state

22   prisoner, commenced these habeas corpus proceedings pursuant to 28

23   U.S.C. § 2254.  Doc. No. 1.  Petitioner challenges his convictions

24   for selling cocaine base and possessing cocaine base for sale.

25        This Court has considered the Petition ("Pet."), Respondent's

26   Answer, Petitioner's Traverse, and all supporting documents

27   submitted by the parties.  For the reasons set forth below, this

28   Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas

1    Corpus be **DENIED.**

2                           **FACTUAL AND PROCEDURAL BACKGROUND**

3           The following facts are taken from the California Court of

4    Appeal's opinion on direct review in <u>People v. Thomas</u>, No. D049171,

5    slip op. (Cal. Ct. App. April 17, 2007).   Lodgment 2.   This Court

6    presumes the state court's factual determinations to be correct

7    absent clear and convincing evidence to the contrary.   28 U.S.C.

8    § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003); <u>see</u>

9    <u>also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of

10   historical fact, including inferences properly drawn from such

11   facts, are entitled to statutory presumption of correctness).

12           Detective Roberto Lemus was working as part of a
              narcotics team when he approached Carla Poole in a
13            known narcotics trafficking area.  Lemus asked her if
              she knew from whom he could buy narcotics, and Poole
14            responded that she would help him find a dealer.
              Lemus gave Poole a prerecorded $20 bill.  Poole walked
15            across the street and spoke to Eric Thomas, who walked
              to the front of a nearby hotel and took something out
16            of a planter box.  He then placed something back in
              the planter box.   Thomas walked back to Poole and
17            handed her something, allegedly rock cocaine, and
              Poole gave Thomas something, allegedly the prerecorded
18            $20 bill, in return.  Poole walked back to Lemus and
              handed him .13 grams of cocaine base.  Lemus gave the
19            "bust signal," and uniformed officers arrested Poole
              and Thomas.

20
              The officers searched Poole and found nothing.
21   The officers searched Thomas and found the prerecorded
     $20 bill, .18 grams cocaine base, and an additional
22   $251 in cash.

23           Officer Robert Stinton searched a planter box
              near where Thomas was arrested and found .81 grams of
24            cocaine base.  He did not search the planter box from
              which Thomas allegedly obtained the cocaine he gave to
25            Poole.

26   Lodgment 2 at 2.

27           On July 12, 2006, a jury convicted Petitioner of the crimes

28   of selling cocaine base and possessing cocaine base for sale in

                                    -2-                    07cv2257-IEG (BLM)

violation of California Health and Safety Code §§ 11352(a) and 11351.5.  Lodgment 1 at 31-32.  The jury also found true the allegations that Petitioner had served a prior person term and suffered a prior violent felony conviction as set forth in California Penal Code §§ 667.5(b), 667(b)-(i) and 1170.12.  Id. at 75-76.  The court sentenced Petitioner to a total of nine years' imprisonment.  Id. at 90-91; Lodgment 2 at 3.

Petitioner appealed his conviction and sentence and, on April 17, 2007, the appellate court affirmed.  Lodgment 2.  The court upheld the trial court's decision not to dismiss Petitioner's prior felony conviction allegation.  Id. at 3-4.  The court also found that there was substantial evidence supporting Petitioner's conviction for possession of cocaine base for sale.  Id. at 4-5.

On June 11, 2007, Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court asserting two claims, "ineffective assistance of counsel" and "violation of due process of law."  Lodgment 3.  On October 31, 2007, the California Supreme Court summarily denied the petition, citing to In re Swain, 34 Cal.2d 300, 304 (1949) and People v. Duvall, 9 Cal.4th 464, 474 (1995).  Lodgment 4.

**STANDARD OF REVIEW**

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.    Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).    A summary denial constitutes an adjudication on the merits.    See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).    Where there is no reasoned decision from the state's highest court, the Court "looks through" to the analysis provided by the underlying appellate court decision.    Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]."    Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision is an "unreasonable application" of

clearly established federal law where the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). "[A] federal habeas court may not issue a writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . . Rather, that application must be *objectively unreasonable*." Andrade, 538 U.S. at 75-76 (emphasis added) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C. § 2254(d)(2). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in the state court proceeding. See Miller-El, 537 U.S. at 340; see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1

# DISCUSSION

2    Petitioner raises one claim in his federal petition. Pet.

3    In this claim, Petitioner alleges that his due process and Sixth

4    Amendment rights were violated when he was forced to be represented

5    by a court-appointed attorney. Id. at 6-8. Petitioner initially

6    argues that his rights were violated because he did not consent in

7    writing to the representation. Id. at 6. Petitioner also asserts

8    that the trial judge violated his constitutional rights when he

9    refused to continue the preliminary hearing and trial to permit

10   Petitioner to locate and hire a new attorney. Id. at 6-8. Finally,

11   Petitioner alleges that the failure to appoint a new lawyer violated

12   his constitutional rights because there was an inherent conflict

13   when his attorney "was selected by the same agency responsible for

14   [his] prosecution" and/or an actual conflict due to the "apparent

15   lack of communication" between Petitioner and his attorney. Id.

16   Respondent counters that the Petition should be denied

17   because Petitioner did not fairly present his claim to the

18   California Supreme Court and that, therefore, his claim is

19   unexhausted. Answer at 5-9. Respondent also contends that the

20   California Supreme Court denied Petitioner's petition on state

21   procedural grounds, and that the petition is thus procedurally

22   defaulted. Id. at 9. Finally, Respondent argues that the Petition

23   should be denied because the state court's decision was not contrary

24   to, or an unreasonable application of, clearly established United

25   States Supreme Court law. Id. at 9-14.

26   In his traverse, Petitioner does not address the procedural

27   default allegation but argues that his claim is exhausted and that

28   the trial court violated his constitutional rights. Traverse.

**A.    Exhaustion**

The exhaustion of available state judicial remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings.    28 U.S.C. § 2254(b); see Rose v. Lundy, 455 U.S. 509, 522 (1982); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).    Exhaustion of a habeas petitioner's federal claims requires that they have been "fairly presented" in each appropriate state court, including a state supreme court with powers of discretionary review.    Baldwin v. Reese, 541 U.S. 27, 29 (2004). However, claims are not exhausted by mere presentation to the state appellate system.    A petitioner also must "alert[] [the state] court to the federal nature of the claim."    Id. at 29.    A petitioner may indicate a federal claim by citing the source of federal law upon which he relies, or by merely labeling the claim as "federal."    Id. at 32.[1]

In his federal habeas petition, Petitioner asserts a due process violation and incorporates a constitutional right to counsel.    Pet.; Traverse.    Is support, he alleges numerous factual predicates including an alleged lack of written consent to counsel's representation, the trial court violation of Petitioner's right to choose a lawyer, the lack of communication between counsel and Petitioner, and the trial court's failure to continue the preliminary hearing to permit him to obtain new counsel.    Pet.;

---

[1]    Though federal courts have not been entirely consistent in specifying the quantum of federal authority a habeas petitioner must present to the state court, the Supreme Court's decision in Baldwin implies that a relatively undeveloped reference to federal principles suffices.    But see, Gray v. Netherland, 518 U.S. 152, 162-63 (1996) (unelaborated appeals to broad constitutional principles insufficient to alert state court to particularized federal claims); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Gray v. Netherland).

Traverse.  In Claim 1 of his state habeas petition, Petitioner also asserts an ineffective assistance of counsel claim.  Pet.  In this claim, he alleges not only that his attorney was not adequately prepared,  but also that his Sixth Amendment right to counsel was violated when the court refused to permit him to be represented by an attorney of his choice and permitted his court-appointed attorney to represent him, even though he had not signed a written consent form and there was an "obvious break-down of communication" between Petitioner and his attorney.  Lodgment 3 at 4.

Respondent argues that Petitioner did not fairly present his federal claim to the California Supreme Court because the federal claim involves a Sixth Amendment right to counsel, including the right to choose his own attorney, whereas the state claim was simply an ineffective assistance of counsel claim.  Answer at 8.  While Respondent is correct that there are differences between the two claims, Respondent construes the claims too narrowly.  Both claims allege a violation of Petitioner's Sixth Amendment right to counsel by the trial court's insistence that Petitioner proceed to trial with the court-appointed attorney, without a signed consent form, and despite the alleged break-down in communication.  This Court must liberally construe pleadings by *pro se* litigants, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (instructing that courts must construe *pro se* habeas filings liberally) and Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) (same), and in light of this fact, the Court finds that the federal claim is exhausted.  Accordingly, this Court **RECOMMENDS** that Petitioner's claim not be denied on this basis.

///

B.        **Procedural Default**

A habeas petition is procedurally defaulted when the last reviewing state court dismissed it for failure to comply with a state rule of procedure. <u>Trest v. Cain</u>, 522 U.S. 87 (1997); <u>Lambright v. Stewart</u>, 241 F.3d 1201, 1205 (9th Cir. 2001). When the procedural rule is independent of federal law and adequate to support the judgment, federal review of the claims is barred unless the petitioner can demonstrate either cause for the default and actual prejudice resulting from the alleged constitutional violations, or that failure to consider the claims will result in a fundamental miscarriage of justice. <u>Carter v. Giurbino</u>, 385 F.3d 1194, 1196-97 (9th Cir. 2004) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). Procedural default is an affirmative defense, and once the respondent has adequately pled the existence of independent and adequate state procedural grounds, the burden to place that defense in issue shifts to the petitioner. <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2003).

1.        **The Duvall/Swain Denial Constitutes an "Independent and Adequate" State Procedural Ground Upon Which the California Supreme Court "Actually Relied"**

The last court to review Petitioner's claims was the California Supreme Court, which issued a one-sentence denial of the petition, citing <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949), and <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995). Lodgment 4; <u>see</u> <u>Carter</u>, 385 F.3d at 1197 (one-sentence summary denial of petition incorporating unelaborated case citation sufficient for procedural default). Petitioner's claim is thus procedurally defaulted if this citation is an "independent and adequate" state procedural ground upon which the California Supreme Court "actually relied." <u>Valerio v. Crawford</u>,

1  306 F.3d 742, 773 (9th Cir. 2002) (en banc).

2      A state court's denial is not independent when it "appeared

3  to rest primarily on resolution of [the petitioner's federal]

4  claims, or to be interwoven with those claims." Coleman, 501 U.S.

5  at 735; Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000)

6  (citing Coleman, 501 U.S. at 733).  Here, the California Supreme

7  Court cited to page 474 of its previous holding in     Duvall.[2]

8  Lodgment 4.  This portion of Duvall describes a habeas petitioner's

9  duty under California law to "state fully and with particularity the

10  facts on which relief is sought," and "include copies of reasonably

11  available documentary evidence supporting the claim." Duvall, 9

12  Cal.4th at 474; see King v. Roe, 340 F.3d 821, 823 (9th Cir. 2003)

13  (recognizing Duvall page 474 as requiring petitioner to plead with

14  particularity).  This requirement is described in depth, and, though

15  page 474 contains numerous citations to California authorities,

16  there are none to federal law.  Id.

17      The cited portions of Duvall and Swain describe a California

18  procedural rule and do not rely on federal law or cases.  In denying

19  Petitioner's claims, the state supreme court relied exclusively on

20  these citations.  Lodgment 4.  Accordingly,the state court's denial

21  in this case was "independent" of federal law. See Carter, 385 F.3d

22  at 1197 (denial independent when "[n]o analysis of federal law

23  enters into the [] equation"); Valerio, 306 F.3d at 775-76 (habeas

24  petition procedurally defaulted when state court clearly and

25

26      [2]  The California Supreme Court also cited to page 304 of its prior
   decision in Swain.  On that page, the Swain Court held that "vague, conclusionary
27  allegations" are "insufficient to warrant issuance of the writ."  Swain, 34
   Cal.2d at 304.  The court also held that this requirement is a procedural hurdle
   and not a decision on the merits.  Id.  In reaching its decision, the Duvall
28  court cited the Swain decision.  Duvall, 9 Cal.4th at 474.

1    expressly relied on state law).

2         To be procedurally defaulted, a petitioner's claims also must

3    be denied on "adequate" grounds.   "A state procedural rule

4    constitutes an adequate bar to federal court review if it was

5    'firmly established and regularly followed' at the time it was

6    applied by the state court."  <u>Poland v. Stewart</u>, 169 F.3d 573, 585

7    (9th Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 425 (1985)).

8    The burden of proving adequacy is upon the state, and if the state

9    does so, then the burden shifts to the petitioner to assert

10   "specific factual allegations that demonstrate the inadequacy of the

11   state procedure, including citation to authority demonstrating

12   inconsistent application of the rule."  <u>Bennett</u>, 322 F.3d at 585-86.

13        When describing a habeas petitioner's duty to plead with

14   particularity and support his claims with documentary evidence, the

15   <u>Duvall</u> court summarized a long-standing rule, citing a series of

16   cases, including <u>Swain</u>, dating from the 1920's to the 1990's, when

17   the opinion was written.  <u>Duvall</u>, 9 Cal.4th at 474.   Since then,

18   California appellate courts have continued to affirm the <u>Duvall</u>

19   requirements.  <u>See</u>, <u>e.g.</u>, <u>In re Hawthorne</u>, 35 Cal. 4th 40 (2005); <u>In

20   re Seaton</u>, 34 Cal. 4th 193 (2004).  Likewise, the Ninth Circuit has

21   followed the California Courts, citing <u>Duvall</u> page 474 as requiring

22   pleading with particularity and supporting documentary evidence.

23   <u>See</u>, <u>e.g.</u>, <u>Griffey v. Lindsey</u>, 345 F.3d 1058, 1066 n.11 (9th Cir.

24   2003) (vacated on other grounds as moot); <u>King</u>, 340 F.3d 823; <u>see

25   also</u> <u>Jones v. Woodford</u>, 2008 WL 505230 at *36, 03cv1463-J (RBB)

26   (S.D. Cal. 2008).   These requirements are thus well-established,

27   have been consistently applied for the better part of a century, and

28   were firmly in place when Petitioner submitted his state supreme

1   court petition in 2007.  _See_ _Carter_, 385 F.3d at 1198 (California

2   procedural rule dating back to 1947 as independent and adequate

3   procedural bar to federal review); _Poland_, 169 F.3d at 583-85 (state

4   rule adequate when "consistently and regularly followed").

5       The burden therefore shifts to Petitioner to prove that the

6   _Duvall_ rules were not firmly established and regularly followed at

7   the time the California Supreme Court denied his petition.  _Bennett_,

8   322 F.3d at 585-86.  Petitioner fails to make any arguments in this

9   respect, much less support his burden with "specific factual

10  allegations."  _Id._  Moreover, the Court's independent review of the

11  law found no support for such an argument.  Petitioner thus fails to

12  show that the state supreme court's citation to _Duvall_ and _Swain_

13  constituted anything but an adequate ground upon which to deny his

14  claims.

15      The California Supreme Court also must have "actually relied"

16  on the _Duvall_/_Swain_ rule in its denial of Petitioner's petition.

17  _Valerio_, 306 F.3d at 773.  As _Duvall_ and _Swain_ were the only cases

18  cited and both provide the same rationale, the supreme court

19  necessarily and actually relied on that holding.

20      For the above reasons, the California Supreme Court's

21  citation to _Duvall_ and _Swain_ constituted "actual reliance" on an

22  "independent and adequate" procedural rule.  Petitioner's claims are

23  therefore procedurally defaulted.

24           **2.  As Petitioner Neither Suffered Cause and Prejudice, Nor
                 Argues Actual Innocence, His Claims are Procedurally**
25               **Defaulted**

26      To overcome procedural default, Petitioner must demonstrate

27  either cause for his default and prejudice resulting from the

28  alleged constitutional violations, or that he is actually innocent,

such that a failure to consider his claims will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750 (standard based on "the important interest in finality" served by state procedural rules and the "significant harm ... that results from the failure of federal courts to respect them"); <u>Boyd v. Thompson</u>, 147 F.3d 1124, 1126 (9th Cir. 1998). Petitioner does not meet this burden.

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him," <u>Coleman</u>, 501 U.S. at 753 (emphasis in original), while prejudice is that resulting from the alleged constitutional errors, <u>id.</u> at 750. Unless a petitioner demonstrates excusable cause for his procedural default, a reviewing federal court need not reach the question of prejudice. <u>Engle v. Isaac</u>, 456 U.S. 107, 134 (1982); <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1147 (9th Cir. 2007). Petitioner must therefore make an initial showing that external factors caused his failures to plead with particularity and support his claims with documentary evidence.

In the instant case, Petitioner does not identify any factors, external or otherwise, that caused him to fail to plead his state claims with particularity. Pet.; Traverse. Rather, Petitioner merely reargues his allegations that his constitutional rights were violated. <u>Id.</u> The Court's own review of the lodgments and pleadings does not reveal any external factors that caused Petitioner's failure to plead with particularity. Accordingly, Petitioner has not established cause for his procedural default. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. at 488; <u>Davis v. Woodford</u>, 384 F.3d 628 (9th Cir. 2004) (petitioner must offer explanation for

1 procedural default).  Because Petitioner has not established cause,

2 the Court need not address the question of prejudice.  Engle, 456

3 U.S. at 134; Smith, 510 F.3d at 1147.

4          The  Court,  therefore,  may  only  reach  the  merits  of

5 Petitioner's habeas claims if, "in light of new evidence, 'it is

6 more likely than not that no reasonable juror would have found

7 petitioner guilty beyond a reasonable doubt,'" and whose continued

8 incarceration would therefore constitute a "miscarriage of justice."

9 House v. Bell, 547 U.S. 518, 519, 536 (2006)(citing Schlup v. Delo,

10 513 U.S. 298, 324, 327 (1995)).  Petitioner has presented no such

11 evidence here, nor does he argue that he is actually innocent of the

12 crimes of which he was convicted.  The miscarriage of justice

13 exception to procedural default is therefore inapplicable to this

14 case.

15          In sum, Duvall and Swain provide independent and adequate

16 state procedural grounds for the California Supreme Court's denial

17 of Petitioner's claims.  As Petitioner neither demonstrates cause

18 for his procedural default, nor contends actual innocence, a

19 reviewing federal court may not look beyond the default to the

20 merits of the petition.  Accordingly, this Court **RECOMMENDS** denying

21 Petitioner's claim on this ground.

22 C.     **Sixth Amendment Right to Counsel**

23          Respondent's final argument is that the Petition should be

24 denied on the merits because Petitioner does not have a federal

25 right to counsel of his choice.  Answer at 9-14.

26          Petitioner argues that the trial court violated his due

27 process and Sixth Amendment rights by (1) permitting his court-

28 appointed attorney to represent him even though Petitioner had not

1   signed a written consent, (2) not continuing the preliminary hearing

2   and trial in order to permit Petitioner to retain counsel of his

3   choice, and (3) not appointing a new lawyer to represent Petitioner

4   due to the inherent conflict and/or break-down in communication

5   between Petitioner and his lawyer.  Pet. at 6-8; Traverse at 2-6.

6        To the extent Petitioner presented these arguments or this

7   claim to a state court, he did so in his habeas petition to the

8   California Supreme Court.  Lodgment 3.  Because that court summarily

9   denied the petition (Lodgment 4) and Petitioner did not present the

10  argument to any other court, this Court must conduct a de novo

11  review.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002)

12  (independent review appropriate when state court reaches merits of

13  a specific claim without providing reasoning).

14        **1.   <u>Facts Pertaining to Legal Representation</u>**

15        On March 10, 2006, Petitioner appeared in court, was

16  arraigned on the charges filed against him, and requested appointed

17  counsel.  Lodgment 1 at 92 (amended minute order).  The judge

18  granted Petitioner's request and appointed the public defender to

19  represent him.  <u>Id.</u>  The court scheduled the preliminary hearing

20  for March 22, 2006.  <u>Id.</u>  On March 22, 2006, the public defender

21  notified the court of a conflict of interest in representing

22  Petitioner.  Lodgment 1 at 94 (minute order).  The Court appointed

23  an attorney from the Private Conflicts Counsel ("PCC"), set a

24  readiness hearing for April 3, and a preliminary examination for

25  April 5.  <u>Id.</u>

26        On April 3, 2006, Petitioner advised the court that he wanted

27  a new attorney.  Lodgment 1 at 95; Pet. at 9-12.  The judge excused

28  government counsel and the public and conducted an *in camera* hearing

1    with Petitioner and his lawyer.  Id.  Petitioner told the court that

2    he did not have an individual objection to PCC attorney, Gary

3    Edwards, or to the representation provided by Mr. Edwards, stating

4    "[i]t's nothing personal.  It's just the position he's in.  He is

5    appointed by the courts." Pet. at 10-11.  Petitioner explained that

6    "any court-appointed attorney will be an automatic conflict of

7    interest because of obligation to the court come before representing

8    me fully as a client in my constitutional rights." Pet. at 10.  The

9    judge explained to Petitioner that all non-retained lawyers are

10   appointed and paid for by the courts.  Id. at 11.  Petitioner

11   responded that he wanted to hire a lawyer but admitted that he had

12   not taken any specific action to do so.  Id.  Based upon this

13   exchange, the court confirmed the preliminary hearing date but

14   stated that Petitioner could hire an attorney if he desired to do

15   so.  Id. at 12.

16         On April 5, 2006, Petitioner's lawyer advised the judge that

17   Petitioner wanted to address the court and request another attorney.

18   Lodgment 5 at 1.  Petitioner apparently provided the court with a

19   written request for a two-week extension of the preliminary hearing.

20   Id. at 2.  Petitioner explained to the judge that he wanted to hire

21   an attorney but admitted that he still had not taken any concrete

22   actions to do so.  Id. at 2-3.  Based upon this record and the April

23   3 hearing, the judge denied Petitioner's request for a continuance

24   and stated that the preliminary hearing would proceed that day and

25   the PCC attorney would represent Petitioner.  Id. at 3-4.

26   Petitioner vehemently objected, citing the denial of his

27   constitutional rights.  Id. at 4.  The judge began the plea colloquy

28   with Petitioner's co-defendant, Gakarla Poole.  Id. at 5.  A few

1  minutes later, Petitioner became verbally abusive and repeatedly
2  demanded to be removed from the courtroom.  Id. at 6-7.  The judge
3  ordered the deputies to gag Petitioner.  Id. at 7.

4      After accepting Ms. Poole's guilty plea, the judge ordered
5  Petitioner returned to the courtroom.[3]  Id. at 12.  The judge
6  explained to Petitioner that he had a right to be present during the
7  preliminary hearing but that the right can be forfeited by
8  inappropriate conduct, such as the conduct Petitioner previously
9  displayed.  Id. Using inflammatory and abusive language, Petitioner
10 told the judge that the judge was violating Petitioner's rights by
11 forcing him to be represented by his PCC lawyer and demanded to be
12 removed from the courtroom.  Id. at 12-13.  The judge instructed the
13 bailiff to remove Petitioner and proceeded with the preliminary
14 hearing without him.  Id. at 13.  At the conclusion of the hearing,
15 the court found probable cause to believe that Petitioner committed
16 the offenses charged in the complaint.  Id. at 30.

17     On June 8, 2006, Petitioner appeared before a new judge for
18 trial. Lodgment 6.  At the beginning of the proceeding, Petitioner
19 told the judge that he had filed a motion and wanted to dismiss his
20 PCC attorney and "be referred to the indigent panel." Id. at 54-56.
21 The judge excluded the prosecutor and conducted another in camera
22 hearing with Petitioner and his attorney.  Id. at 56.  Petitioner
23 explained that he did not want to be represented by the PCC lawyer
24 because he is court-appointed so his loyalty is to the government,

25  _____

26     [3]  The record does not indicate whether Petitioner actually was removed
    from the courtroom.  The judge instructed the deputies to gag Petitioner after
    Petitioner repeatedly swore at the judge. Lodgment 5 at 7.  However, the judge
27  did not order Petitioner removed from the courtroom and Petitioner made a comment
    during his co-defendant's guilty plea.  Id.  After the guilty plea, however, the
28  judge told Petitioner that he had Petitioner "brought back" for an additional
    discussion.  Id. at 12.

rather than to Petitioner, and because he has not discussed Petitioner's case with him. _Id._ 57-58. Gary Edwards, the PCC lawyer responded that Petitioner had threatened him during the preliminary hearing and had refused to meet with him, talk to him, or return his phone calls after the hearing. _Id._ at 58-60. However, Mr. Edwards confirmed that he was familiar with the facts of the case and ready to proceed with trial. _Id._ at 59. The judge then clarified with Petitioner that Petitioner's real dispute was with _any_ lawyer appointed by the court and paid by the government, rather than the individual PCC lawyer, and that he was not objecting specifically to representation by Mr. Edwards. _Id._ at 61. In response, the judge carefully explained the criminal defense system to Petitioner and attempted to find a solution to Petitioner's representation concerns, which would permit the case to proceed to resolution. _Id._ at 61-68. Petitioner again became verbally abusive and demanded to be removed from the courtroom. _Id._ at 65-69. The judge advised Petitioner that he could be removed from the courtroom if he so desired, but the trial would proceed without him. _Id._ at 68-69. Finally, the judge asked Petitioner if he "would like to be present?" and Petitioner replied "No, I won't be present. I am not going to be represented by this PCC man." _Id._ at 69. The judge then directed that Petitioner be removed from the courtroom and proceeded with the hearing. _Id._ at 69-70.

In an abundance of caution, the court arranged to have Petitioner returned to the courtroom prior to the commencement of trial to verify whether he wished to be present for the trial, but Petitioner refused to exit the holding cell. _Id._ at 81-85. After some discussion, the judge decided to ask the bailiffs to forcibly

1    transport Petitioner to court so the judge could again advise

2    Petitioner of his constitutional rights, including the right to be

3    present during his trial. Id. at 85-88. Petitioner apparently then

4    decided to return to court voluntarily. Id. at 88. The judge

5    advised Petitioner that he had the right to be present for his jury

6    trial and to be dressed in non-jail clothing, but that he would have

7    to conduct himself in a respectful manner. Id. at 90-92.

8    Petitioner refused to answer any of the judge's questions but, in

9    response to the question of whether he wished to talk to his

10   attorney, Petitioner "flipped his attorney the bird." Id. at 92-94.

11   The trial then proceeded without Petitioner's presence. Lodgments

12   7-8.

13       **2.   <u>Written Consent</u>**

14       Petitioner's first argument is that the court violated his

15   rights by forcing him to be represented by an appointed attorney

16   when Petitioner had  not provided written consent for the

17   representation. Pet. at 6. In support of his argument, Petitioner

18   cites to the Rules of Professional Conduct of the California State

19   Bar. Id. This argument is not cognizable on federal review.

20       When conducting habeas review, a federal court is limited to

21   "deciding whether a conviction violated the Constitution, laws or

22   treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68

23   (1991); 28 U.S.C. § 2254 (§ 2254 habeas review only available "on

24   the ground that [a petitioner] is in custody in violation of the

25   Constitution or laws or treaties of the United States"). Habeas

26   relief is not available for an alleged error in the interpretation

27   or application of state law. Estelle, 502 U.S. at 67-69. This

28   Court is therefore precluded from considering Petitioner's claim

1   arising from an alleged violation of the California Rules of

2   Professional Conduct.[4]  See Little v. Crawford, 449 F.3d 1075, 1082

3   (9th Cir. 2006) (contention that state court violated state law by

4   failing to inform petitioner of probation term is not cognizable on

5   federal review); Beaty v. Stewart, 303 F.3d 975, 986 (9th Cir. 2002)

6   (claim that state court improperly applied state sentencing law not

7   federally cognizable).

8          **3.   Right To Counsel of Choice**

9          Petitioner's next argument is that his constitutional rights

10   were violated because he was denied his right to be represented by

11   an attorney of his choice.  Pet. at 6-8; Traverse at 2-5.

12          The Sixth Amendment guarantees a criminal defendant the right

13   to be represented by effective trial counsel.  See, e.g., Powell v.

14   Alabama, 287 U.S. 45 (1932); Strickland v. Washington, 466 U.S. 668

15   (1984).  As part of this right, a defendant has a qualified right to

16   choose his preferred trial counsel.  Caplin & Drysdale, Chartered v.

17   United States, 491 U.S. 617, 624 (1989).  If, however, a defendant

18   does not have the financial ability to hire an attorney and

19   therefore requires the appointment of counsel, the defendant does

20   not have a right to be represented by appointed counsel of his

21   choice.  Id. ("[A] defendant may not insist on representation by an

22   attorney he cannot afford.") (quoting Wheat v. United States, 486

23   U.S. 153, 159 (1988)); United States v. Gonzalez-Lopez, 548 U.S.

24

25          [4] To the extent that Petitioner may be trying to argue that the lack of
written consent violates his Sixth Amendment or other constitutional rights, he
26   fails to provide any legal support for his argument.  Moreover, the Court is not
aware of any constitutional provision or clearly established Federal law
27   requiring a criminal defendant to agree in writing to his legal representation.
Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 653 (2006) (AEDPA requires an
28   analysis of whether the state court's ruling was contrary to, or an unreasonable
application of, a decision of the United States Supreme Court).

1 140, 151 (2006) ("[T]he right to counsel of choice does not extend

2 to defendants who require counsel to be appointed for them.").

3 Similarly, while a defendant has a right to be represented by

4 competent counsel, he does not have a right to a "meaningful

5 attorney-client relationship." Morris v. Slappy, 461 U.S. 1, 13

6 (1983).

7      Here, the record reflects that Petitioner did not hire an

8 attorney, did not seek to substitute in a retained attorney, and did

9 not indicate that he had the financial ability to hire his own

10 lawyer. Pet. at 9-12; Lodgment 5 at 1-13; Lodgment 6 at 54-70.

11 Rather, Petitioner repeatedly objected to the appointed attorney and

12 demanded a new free attorney. Id. Because there is no evidence

13 that Petitioner had the financial resources to retain a lawyer or

14 that he had identified a lawyer who was willing to represent him,

15 Petitioner required the appointment of counsel and therefore did not

16 have the right to choose his lawyer. Caplin & Drysdale, 491 U.S. at

17 624; see also Gonzalez v. Knowles, 515 F.3d 1006, 1013 (9th Cir.

18 2008) (no violation of right to counsel where trial court declined

19 to appoint attorney requested by defendant and who was available and

20 willing to represent defendant). Accordingly, the trial judge did

21 not violate Petitioner's constitutional rights by rejecting his

22 request to dictate the attorney to be provided to him at the

23 government's expense.

24      Petitioner also argues that the trial court violated his

25 constitutional rights by denying his request to continue the

26 preliminary hearing and trial in order to provide him additional

27

28

1    time to obtain counsel.[5]  The United States Supreme Court recently

2    reiterated that a trial court retains "wide latitude in balancing

3    the right to counsel of choice against the needs of fairness, and

4    against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at

5    152; see also Miller v. Blacketter, 525 F.3d 890, 895 (9th Cir.

6    2008).   "As such, trial courts retain the discretion to 'make

7    scheduling  and  other  decisions  that  effectively  exclude  a

8    defendant's first choice of counsel.'" Miller, 525 F.3d at 895,

9    quoting Gonzalez-Lopez, 548 U.S. at 152.

10        In evaluating a similar habeas claim, the Ninth Circuit

11   considered three factors: whether the defendant had retained new

12   counsel, whether current counsel was prepared and competent to

13   proceed forward, and the timing of defendant's request to continue.

14   Miller, 525 F.3d at 896-98.  In Miller, the court denied a habeas

15   petition alleging a violation of the right to counsel where the

16   petitioner requested the continuance the morning that trial was

17   scheduled to begin, petitioner had not yet retained a lawyer, and

18   his appointed lawyer was prepared to represent him.  Id.  The same

19   analysis dictates the same result in this case.

20        In the instant case, as in Miller, Petitioner had not

21   retained new counsel at the time he requested the continuances.

22   During the hearing on April 3, 2006, Petitioner told the judge that

23   he had not taken any affirmative action to retain a lawyer and that

24   he was requesting the continuance so that he could continue to look

25

26        _____

          [5]   While the record does not establish that Petitioner requested a
27   continuance of his trial to obtain a new lawyer, it does reflect that he
     allegedly submitted a written request and that he wanted a new lawyer.  Lodgment
     6 at 54-56.  Because he did not identify a specific lawyer who was ready to
28   proceed, a new lawyer, whether appointed or retained, would require a continuance
     of the trial.

into the possibility of hiring an attorney.  Lodgment 1 at 95; Pet. at 11.  Petitioner confirmed these facts on April 5, 2006, when he again requested a continuance before the start of the preliminary hearing.  Lodgment 5 at 1-4.  And, on the morning of trial, Petitioner requested a referral to the "indigent panel," indicating that he still had not retained a lawyer.  Lodgment 6 at 54-56. Accordingly, there is no evidence that Petitioner had hired a new attorney who was willing and able to proceed with the hearing or trial.

Similarly, in both the instant case and <u>Miller</u>, the existing, appointed lawyer was ready and able to represent the defendant. Although Petitioner argued that his lawyer was not prepared to represent him[6] (Lodgment 6 at 57-58), the appointed lawyer explained their relationship and his preparation and stated that he was prepared to represent Petitioner at trial (<u>id.</u> at 58-60).  Further, Petitioner repeatedly told the judge that he did not have an objection to the individual lawyer appointed to represent him or any specific aspect of his representation; rather, he stated that his objection was to any court-appointed lawyer because there was an "automatic conflict of interest" when the government that is prosecuting him also is paying his lawyer.  Pet. at 10-12; Lodgment 5 at 1-4; Lodgment 6 at 57-58, 61.

Finally, Petitioner requested the continuances two days before the preliminary hearing, the morning of the preliminary hearing, and the morning of trial.  Pet. at 9-12; Lodgments 5 and 6. Significantly, Petitioner had approximately two months between the

_____

[6]  Notably, Petitioner is not alleging ineffective assistance of counsel in his federal habeas petition.  Pet.; Traverse.

1  preliminary hearing and the trial and yet he did not retain a

2  lawyer.    Rather, he waited until the morning of trial to again

3  request new counsel.    Lodgement 6 at 54-56.    Petitioner does not

4  provide any justification for the timing of his requests, other than

5  to reiterate his erroneous belief that there is an inherent conflict

6  with any court-appointed attorney representation and that he

7  therefore has a right to a new, free attorney obtained from some

8  other source.    Lodgments 5 and 6.    Accordingly, Petitioner has not

9  provided any justification for his late requests.    <u>Miller</u>, 525 F.3d

10  at 897-98 (court properly considers timing of request and the

11  justification, if any, for a late request).

12         "[O]nly [a trial court's] unreasonable and arbitrary

13  'insistence upon expeditiousness in the face of a justifiable

14  request for delay violates the Sixth Amendment."    <u>Miller</u>, 525 F.3d

15  at 897, quoting <u>Morris</u>, 461 U.S. at 11-12.    Given all of the facts

16  of this case, the Court finds that the judges' decisions to deny

17  Petitioner's requests to continue the hearings and trial were

18  neither arbitrary nor unreasonable, that Petitioner's requests were

19  not justifiable, and that the judges did not abuse their discretion

20  by denying Petitioner's requests to continue the preliminary hearing

21  and trial.    <u>Morris</u>, 461 U.S. at 12-14 (defendant's Sixth Amendment

22  rights not violated when trial court refused to continue trial to

23  permit defendant's preferred public defender to represent him);

24  <u>Miller</u>, 525 F.3d at 895-98 (no violation of right to counsel where

25  trial court denied continuance requested morning of trial and new

26  counsel had not yet been retained); <u>Bradley v. Henry</u>, 510 F.3d 1093,

27  1100 (9th Cir. 2007) (trial court "may deny motion to substitute

28  retained counsel if there is a substantial risk that the delay will

1  result in an undue delay of the proceedings").

2      **3.  Alleged Conflict with Counsel**

3      Finally, Petitioner argues that the trial court violated his

4  constitutional rights by refusing to appoint a new attorney to

5  represent him when there was an inherent conflict and/or an

6  "apparent lack of communication" between Petitioner and his

7  appointed attorney.  Pet. at 6-8.

8      The Sixth Amendment provides a defendant with the right to be

9  represented by an attorney who does not have an actual conflict of

10  interest.  See Holloway v. Arkansas, 435 U.S. 475, 483-84 (1978)

11  (representation by one attorney of several defendants violates the

12  Sixth Amendment if it presents an actual conflict of interest).  If

13  a defendant raises an actual conflict issue, or the judge knows or

14  reasonably should know of such a conflict, the judge has a duty to

15  inquire into the details of the conflict.  Lockhart v. Terhune, 250

16  F.3d 1223, 1229-30 (9th Cir. 2001) (summarizing Supreme Court

17  decisions).  Similarly, if a defendant requests a new attorney on

18  the grounds that he has a conflict with his attorney that prevents

19  him from receiving his constitutionally-protected representation,

20  the Sixth Amendment requires that the trial court conduct an

21  "appropriate inquiry" into the allegations before the case proceeds.

22  Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000); Plumlee v.

23  Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (same).

24      Here, Petitioner has not established that his lawyer had an

25  actual conflict of interest.  Counsel did not represent more than

26  one defendant and there is no evidence that counsel previously

27  represented another client whose representation conflicted with his

28  representation of Petitioner.  Similarly, there is no evidence that

1    any aspect of the individual lawyer created an actual conflict.
2    Plumlee, 512 F.3d at 1210 (issue is whether there is an actual,
3    legal conflict).  Moreover, Petitioner repeatedly advised the court
4    that the alleged conflict was not an actual one involving his
5    individual attorney, but one inherent in a system where the court
6    selects and appoints the defense lawyer and government money pays
7    the salaries of both prosecutors and defense lawyers.  Pet. at 9-12;
8    Lodgments 5 and 6.

9        To the extent that Petitioner is arguing that his distrust of
10   his attorney created a conflict requiring the appointment of new
11   counsel, the law does not support his argument.  In Morris, 461 U.S.
12   at 13-14, the Supreme Court held that the Sixth Amendment did not
13   guarantee "a meaningful relationship between an accused and his
14   counsel."  In interpreting this holding, the Ninth Circuit recently
15   rejected a similar habeas petitioner's argument, finding no
16   constitutional violation where the Petitioner was "represented by a
17   lawyer free of actual conflicts of interest, but with whom the
18   defendant refuses to cooperate because of dislike or distrust."
19   Plumlee, 512 F.3d at 1211.  Accordingly, Petitioner's argument that
20   he was entitled to a new attorney because he did not trust his
21   appointed lawyer due to the manner in which he was appointed and
22   paid does not constitute a violation of the Sixth Amendment or any
23   other constitutional right.

24       Finally, the court did conduct appropriate inquiries into
25   Petitioner's conflict allegations.  In both April and June of 2006,
26   when Petitioner raised this issue, the presiding judge immediately
27   excluded the prosecutor and conducted an *in camera*, *ex parte* inquiry
28   into Petitioner's allegations.  Pet. at 9-12; Lodgment 6 at 54-69.

1    The judges specifically asked Petitioner whether he objected to the

2    actual representation that he was receiving from his appointed

3    lawyer. Pet. at 10-11; Lodgment 6 at 58-61. In April, Petitioner

4    confirmed that the alleged conflict involved any lawyer appointed

5    and paid by the government, and not the individual appointed PCC

6    lawyer. Pet. at 10-11. In June, the judge solicited Petitioner's

7    complaints against the individual lawyer and permitted the lawyer to

8    explain his conduct. Lodgment 6 at 58-60. The judge then opined

9    that Petitioner's real dispute appeared to be with any lawyer

10   appointed and paid by the government, and not the conduct of his

11   currently-appointed lawyer. Id. at 60-61. Petitioner confirmed

12   that the court's opinion was correct. Id. at 61. Once the trial

13   judge determined that Petitioner's alleged conflict was one inherent

14   in the system, that Petitioner objected to being represented by an

15   attorney who is paid by the same government that was prosecuting

16   him, the judge expended considerable time and effort to explain the

17   system to Petitioner and to assure him that the system could provide

18   him with competent counsel and that there was not an inherent

19   conflict. Id. at 61-68.

20       However, Petitioner rebuffed the judge's efforts, became

21   verbally abusive, and demanded to be removed from the courtroom.

22   Id. at 65-69. Accordingly, the record establishes that the state

23   court judges complied with the law by considering Petitioner's

24   conflict claims, conducting an immediate and appropriate inquiry,

25   and properly determining that there was no conflict in counsel's

26   representation of Petitioner that required the appointment of a new

27   lawyer. King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992) (no

28   constitutional violation where trial court briefly inquired into

1  basis for request for appointment of counsel and then denied it).

2  For the reasons set forth above, the Court finds that the

3  California Supreme Court's denial of Petitioner's claim that his

4  constitutional right to counsel of choice was violated was not

5  contrary to, or an unreasonable application of, clearly established

6  Federal law.  This Court therefore **RECOMMENDS** that Petitioner's

7  claim for habeas relief be **DENIED**.

8  <u>**CONCLUSION AND RECOMMENDATION**</u>

9  In sum, this Court finds that Petitioner has failed to

10  present any evidence suggesting that the California Supreme Court's

11  decision was contrary to, or an unreasonable application of, clearly

12  established federal law.  <u>See</u> 28 U.S.C. § 2254(d).  Nor has

13  Petitioner made any supported argument that further factual

14  development is necessary, such that an evidentiary hearing would be

15  warranted.  <u>See</u> 28 U.S.C. § 2254(e)(2) (exceptions where an

16  evidentiary hearing may be appropriate).  As such, this Court

17  **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be

18  **DENIED** and the case dismissed with prejudice.

19  For all the foregoing reasons, **IT IS RECOMMENDED** that the

20  District Court issue an Order: (1) approving and adopting this

21  Report and Recommendation and (2) directing that Judgment be entered

22  denying the Petition.

23  **IT IS HEREBY ORDERED** that any written objections to this

24  Report must be filed with the Court and served on all parties **no**

25  **later than <u>August 15, 2008.</u>**  The document should be captioned

26  "Objections to Report and Recommendation."

27  **IT IS FURTHER ORDERED** that any reply to the objections shall

28  be filed with the Court and served on all parties **no later than**

1   **September 5, 2008.**    The parties are advised that failure to file

2   objections within the specified time may waive the right to raise

3   those objections on appeal of the Court's order.    See Turner v.

4   Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

5

6   DATED:   July 25, 2008

7

8                                        BARBARA L. MAJOR
                                         United States Magistrate Judge
9

10

11  COPY TO:

12  HONORABLE IRMA E. GONZALEZ
    UNITED STATES DISTRICT JUDGE
13
    ALL COUNSEL
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28