UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERIC ANGEL THOMAS, | ) | Civil No. 07cv2257-IEG (BLM) |
| Petitioner, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| M.C. KRAMER, Warden, | ) | |
| Respondent. | ) | |

This Report and Recommendation is submitted to United States District Judge Irma E. Gonzalez pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On November 29, 2007, Petitioner Eric Angel Thomas, a state prisoner, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. Doc. No. 1. Petitioner challenges his convictions for selling cocaine base and possessing cocaine base for sale.

This Court has considered the Petition ("Pet."), Respondent's Answer, Petitioner's Traverse, and all supporting documents submitted by the parties. For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas

1    Corpus be **DENIED.**

2                    **FACTUAL AND PROCEDURAL BACKGROUND**

3          The following facts are taken from the California Court of

4    Appeal's opinion on direct review in <u>People v. Thomas</u>, No. D049171,

5    slip op. (Cal. Ct. App. April 17, 2007).  Lodgment 2.  This Court

6    presumes the state court's factual determinations to be correct

7    absent clear and convincing evidence to the contrary.  28 U.S.C.

8    § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003); <u>see</u>

9    <u>also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of

10   historical fact, including inferences properly drawn from such

11   facts, are entitled to statutory presumption of correctness).

12          Detective Roberto Lemus was working as part of a
     narcotics team when he approached Carla Poole in a
13   known narcotics trafficking area.  Lemus asked her if
     she knew from whom he could buy narcotics, and Poole
14   responded that she would help him find a dealer.
     Lemus gave Poole a prerecorded $20 bill.  Poole walked
15   across the street and spoke to Eric Thomas, who walked
     to the front of a nearby hotel and took something out
16   of a planter box.  He then placed something back in
     the planter box.  Thomas walked back to Poole and
17   handed her something, allegedly rock cocaine, and
     Poole gave Thomas something, allegedly the prerecorded
18   $20 bill, in return.  Poole walked back to Lemus and
     handed him .13 grams of cocaine base.  Lemus gave the
19   "bust signal," and uniformed officers arrested Poole
     and Thomas.
20
            The officers searched Poole and found nothing.
21   The officers searched Thomas and found the prerecorded
     $20 bill, .18 grams cocaine base, and an additional
22   $251 in cash.

23          Officer Robert Stinton searched a planter box
     near where Thomas was arrested and found .81 grams of
24   cocaine base.  He did not search the planter box from
     which Thomas allegedly obtained the cocaine he gave to
25   Poole.

26   Lodgment 2 at 2.

27          On July 12, 2006, a jury convicted Petitioner of the crimes

28   of selling cocaine base and possessing cocaine base for sale in

                                    -2-

1   violation of California Health and Safety Code §§ 11352(a) and

2   11351.5.   Lodgment 1 at 31-32.   The jury also found true the

3   allegations that Petitioner had served a prior person term and

4   suffered a prior violent felony conviction as set forth in

5   California Penal Code §§ 667.5(b), 667(b)-(i) and 1170.12.   Id. at

6   75-76.   The court sentenced Petitioner to a total of nine years'

7   imprisonment.   Id. at 90-91; Lodgment 2 at 3.

8        Petitioner appealed his conviction and sentence and, on April

9   17, 2007, the appellate court affirmed.   Lodgment 2.   The court

10  upheld the trial court's decision not to dismiss Petitioner's prior

11  felony conviction allegation.   Id. at 3-4.   The court also found

12  that there was substantial evidence supporting Petitioner's

13  conviction for possession of cocaine base for sale.   Id. at 4-5.

14       On June 11, 2007, Petitioner filed a Petition for Writ of

15  Habeas Corpus in the California Supreme Court asserting two claims,

16  "ineffective assistance of counsel" and "violation of due process of

17  law."   Lodgment 3.   On October 31, 2007, the California Supreme

18  Court summarily denied the petition, citing to In re Swain, 34

19  Cal.2d 300, 304 (1949) and People v. Duvall, 9 Cal.4th 464, 474

20  (1995).   Lodgment 4.

21                          **STANDARD OF REVIEW**

22       Title 28 of the United States Code, section 2254(a), sets

23  forth the following scope of review for federal habeas corpus

24  claims:

25           The Supreme Court, a Justice thereof, a circuit judge,
             or a district court shall entertain an application for
26           a writ of habeas corpus in behalf of a person in
             custody pursuant to the judgment of a State court only
27           on the ground that he is in custody in violation of
             the Constitution or laws or treaties of the United
28           States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.   Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A summary denial constitutes an adjudication on the merits.   See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).   Where there is no reasoned decision from the state's highest court, the Court "looks through" to the analysis provided by the underlying appellate court decision.   Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]."   Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision is an "unreasonable application" of

1   clearly established federal law where the state court "identifies
2   the correct governing legal principle from this Court's decisions
3   but unreasonably applies that principle to the facts of the
4   prisoner's case." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).
5   "[A] federal habeas court may not issue a writ simply because the
6   court concludes in its independent judgment that the relevant state-
7   court decision applied clearly established federal law erroneously
8   or incorrectly . . . . Rather, that application must be *objectively*
9   *unreasonable*." Andrade, 538 U.S. at 75-76 (emphasis added)
10  (internal quotation marks and citations omitted). Clearly
11  established federal law "refers to the holdings, as opposed to the
12  dicta, of [the United States Supreme] Court's decisions." Williams,
13  529 U.S. at 412.

14       Finally, habeas relief also is available if the state court's
15  adjudication of a claim "resulted in a decision that was based on an
16  unreasonable determination of the facts in light of the evidence
17  presented in state court." 28 U.S.C. § 2254(d)(2). A state court's
18  decision will not be overturned on factual grounds unless this Court
19  finds that the state court's factual determinations were objectively
20  unreasonable in light of the evidence presented in the state court
21  proceeding. See Miller-El, 537 U.S. at 340; see also Rice v.
22  Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable
23  minds reviewing the record might disagree" does not render a
24  decision objectively unreasonable). This Court will presume that
25  the state court's factual findings are correct, and Petitioner may
26  overcome that presumption only by clear and convincing evidence. 28
27  U.S.C. § 2254(e)(1).

28

# **DISCUSSION**

Petitioner raises one claim in his federal petition.  Pet. In this claim, Petitioner alleges that his due process and Sixth Amendment rights were violated when he was forced to be represented by a court-appointed attorney.  <u>Id.</u> at 6-8.  Petitioner initially argues that his rights were violated because he did not consent in writing to the representation.  <u>Id.</u> at 6.  Petitioner also asserts that the trial judge violated his constitutional rights when he refused to continue the preliminary hearing and trial to permit Petitioner to locate and hire a new attorney.  <u>Id.</u> at 6-8.  Finally, Petitioner alleges that the failure to appoint a new lawyer violated his constitutional rights because there was an inherent conflict when his attorney "was selected by the same agency responsible for [his] prosecution" and/or an actual conflict due to the "apparent lack of communication" between Petitioner and his attorney.  <u>Id.</u>

Respondent counters that the Petition should be denied because Petitioner did not fairly present his claim to the California Supreme Court and that, therefore, his claim is unexhausted.  Answer at 5-9.  Respondent also  contends that the California Supreme Court denied Petitioner's petition on state procedural grounds, and that the petition is thus procedurally defaulted.  <u>Id.</u> at 9.  Finally, Respondent argues that the Petition should be denied because the state court's decision was not contrary to, or an unreasonable application of, clearly established United States Supreme Court law.  <u>Id.</u> at 9-14.

In his traverse, Petitioner does not address the procedural default allegation but argues that his claim is exhausted and that the trial court violated his constitutional rights.  Traverse.

**A.      Exhaustion**

The exhaustion of available state judicial remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings.   28 U.S.C. § 2254(b); see Rose v. Lundy, 455 U.S. 509, 522 (1982); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).   Exhaustion of a habeas petitioner's federal claims requires that they have been "fairly presented" in each appropriate state court, including a state supreme court with powers of discretionary review.   Baldwin v. Reese, 541 U.S. 27, 29 (2004). However, claims are not exhausted by mere presentation to the state appellate system.   A petitioner also must "alert[] [the state] court to the federal nature of the claim."   Id. at 29.   A petitioner may indicate a federal claim by citing the source of federal law upon which he relies, or by merely labeling the claim as "federal."   Id. at 32.[1]

In his federal habeas petition, Petitioner asserts a due process violation and incorporates a constitutional right to counsel.   Pet.; Traverse.   Is support, he alleges numerous factual predicates including an alleged lack of written consent to counsel's representation, the trial court violation of Petitioner's right to choose a lawyer, the lack of communication between counsel and Petitioner, and the trial court's failure to continue the preliminary hearing to permit him to obtain new counsel.   Pet.;

---

[1]   Though federal courts have not been entirely consistent in specifying the quantum of federal authority a habeas petitioner must present to the state court, the Supreme Court's decision in Baldwin implies that a relatively undeveloped reference to federal principles suffices.   But see, Gray v. Netherland, 518 U.S. 152, 162-63 (1996) (unelaborated appeals to broad constitutional principles insufficient to alert state court to particularized federal claims); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Gray v. Netherland).

1   Traverse.  In Claim 1 of his state habeas petition, Petitioner also
2   asserts an ineffective assistance of counsel claim.  Pet.  In this
3   claim, he alleges not only that his attorney was not adequately
4   prepared,  but also that his Sixth Amendment right to counsel was
5   violated when the court refused to permit him to be represented by
6   an attorney of his choice and permitted his court-appointed attorney
7   to represent him, even though he had not signed a written consent
8   form and there was an "obvious break-down of communication" between
9   Petitioner and his attorney.  Lodgment 3 at 4.

10       Respondent argues that Petitioner did not fairly present his
11  federal claim to the California Supreme Court because the federal
12  claim involves a Sixth Amendment right to counsel, including the
13  right to choose his own attorney, whereas the state claim was simply
14  an ineffective assistance of counsel claim.  Answer at 8.  While
15  Respondent is correct that there are differences between the two
16  claims, Respondent construes the claims too narrowly.  Both claims
17  allege a violation of Petitioner's Sixth Amendment right to counsel
18  by the trial court's insistence that Petitioner proceed to trial
19  with the court-appointed attorney, without a signed consent form,
20  and despite the alleged break-down in communication.  This Court
21  must liberally construe pleadings by *pro se* litigants, see Haines v.
22  Kerner, 404 U.S. 519, 520 (1972) (instructing that courts must
23  construe *pro se* habeas filings liberally) and Allen v. Calderon, 408
24  F.3d 1150, 1153 (9th Cir. 2005) (same), and in light of this fact,
25  the Court finds that the federal claim is exhausted.  Accordingly,
26  this Court **RECOMMENDS** that Petitioner's claim not be denied on this
27  basis.
28  ///

1    **B.      Procedural Default**

2           A habeas petition is procedurally defaulted when the last

3    reviewing state court dismissed it for failure to comply with a

4    state rule of procedure.   <u>Trest v. Cain</u> , 522 U.S. 87 (1997);

5    <u>Lambright v. Stewart</u>, 241 F.3d 1201, 1205 (9th Cir. 2001).  When the

6    procedural rule is independent of federal law and adequate to

7    support the judgment, federal review of the claims is barred unless

8    the petitioner can demonstrate either cause for the default and

9    actual prejudice resulting from the alleged constitutional

10   violations, or that failure to consider the claims will result in a

11   fundamental miscarriage of justice.   <u>Carter v. Giurbino</u>, 385 F.3d

12   1194, 1196-97 (9th Cir. 2004) (citing <u>Coleman v. Thompson</u>, 501 U.S.

13   722, 750 (1991)).  Procedural default is an affirmative defense, and

14   once the respondent has adequately pled the existence of independent

15   and adequate state procedural grounds, the burden to place that

16   defense in issue shifts to the petitioner.   <u>Bennett v. Mueller</u>, 322

17   F.3d 573, 586 (9th Cir. 2003).

18          **1.      The Duvall/Swain Denial Constitutes an "Independent and**
                     **Adequate" State Procedural Ground Upon Which the**
19                   **California Supreme Court "Actually Relied"**

20          The last court to review Petitioner's claims was the

21   California Supreme Court, which issued a one-sentence denial of the

22   petition, citing <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949), and <u>People</u>

23   <u>v. Duvall</u>, 9 Cal.4th 464, 474 (1995).  Lodgment 4; <u>see</u> <u>Carter</u>, 385

24   F.3d at 1197 (one-sentence summary denial of petition incorporating

25   unelaborated case citation sufficient for procedural default).

26   Petitioner's claim is thus procedurally defaulted if this citation

27   is an "independent and adequate" state procedural ground upon which

28   the California Supreme Court "actually relied." <u>Valerio v. Crawford</u>,

1    306 F.3d 742, 773 (9th Cir. 2002) (en banc).

2        A state court's denial is not independent when it "appeared
3    to rest primarily on resolution of [the petitioner's federal]
4    claims, or to be interwoven with those claims." Coleman, 501 U.S.
5    at 735; Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000)
6    (citing Coleman, 501 U.S. at 733).   Here, the California Supreme
7    Court cited to page 474 of its previous holding in        Duvall.[2]
8    Lodgment 4.   This portion of Duvall describes a habeas petitioner's
9    duty under California law to "state fully and with particularity the
10   facts on which relief is sought," and "include copies of reasonably
11   available documentary evidence supporting the claim." Duvall, 9
12   Cal.4th at 474; see King v. Roe, 340 F.3d 821, 823 (9th Cir. 2003)
13   (recognizing Duvall page 474 as requiring petitioner to plead with
14   particularity).   This requirement is described in depth, and, though
15   page 474 contains numerous citations to California authorities,
16   there are none to federal law.   Id.

17       The cited portions of Duvall and Swain describe a California
18   procedural rule and do not rely on federal law or cases.   In denying
19   Petitioner's claims, the state supreme court relied exclusively on
20   these citations.   Lodgment 4.   Accordingly,the state court's denial
21   in this case was "independent" of federal law.   See Carter, 385 F.3d
22   at 1197 (denial independent when "[n]o analysis of federal law
23   enters into the [] equation"); Valerio, 306 F.3d at 775-76 (habeas
24   petition procedurally defaulted when state court clearly and

25

_____

26        [2]   The California Supreme Court also cited to page 304 of its prior
     decision in Swain.   On that page, the Swain Court held that "vague, conclusionary
27   allegations" are "insufficient to warrant issuance of the writ."   Swain, 34
     Cal.2d at 304.   The court also held that this requirement is a procedural hurdle
28   and not a decision on the merits.   Id.   In reaching its decision, the Duvall
     court cited the Swain decision.   Duvall, 9 Cal.4th at 474.

1    expressly relied on state law).

2          To be procedurally defaulted, a petitioner's claims also must

3    be denied on "adequate" grounds.   "A state procedural rule

4    constitutes an adequate bar to federal court review if it was

5    'firmly established and regularly followed' at the time it was

6    applied by the state court." <u>Poland v. Stewart</u>, 169 F.3d 573, 585

7    (9th Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 425 (1985)).

8    The burden of proving adequacy is upon the state, and if the state

9    does so, then the burden shifts to the petitioner to assert

10   "specific factual allegations that demonstrate the inadequacy of the

11   state procedure, including citation to authority demonstrating

12   inconsistent application of the rule." <u>Bennett</u>, 322 F.3d at 585-86.

13         When describing a habeas petitioner's duty to plead with

14   particularity and support his claims with documentary evidence, the

15   <u>Duvall</u> court summarized a long-standing rule, citing a series of

16   cases, including <u>Swain</u>, dating from the 1920's to the 1990's, when

17   the opinion was written. <u>Duvall</u>, 9 Cal.4th at 474.   Since then,

18   California appellate courts have continued to affirm the <u>Duvall</u>

19   requirements. <u>See</u>, <u>e.g.</u>, <u>In re Hawthorne</u>, 35 Cal. 4th 40 (2005); <u>In</u>

20   <u>re Seaton</u>, 34 Cal. 4th 193 (2004).   Likewise, the Ninth Circuit has

21   followed the California Courts, citing <u>Duvall</u> page 474 as requiring

22   pleading with particularity and supporting documentary evidence.

23   <u>See</u>, <u>e.g.</u>, <u>Griffey v. Lindsey</u>, 345 F.3d 1058, 1066 n.11 (9th Cir.

24   2003) (vacated on other grounds as moot); <u>King</u>, 340 F.3d 823; <u>see</u>

25   <u>also</u> <u>Jones v. Woodford</u>, 2008 WL 505230 at *36, 03cv1463-J (RBB)

26   (S.D. Cal. 2008).   These requirements are thus well-established,

27   have been consistently applied for the better part of a century, and

28   were firmly in place when Petitioner submitted his state supreme

1   court petition in 2007.  See Carter, 385 F.3d at 1198 (California

2   procedural rule dating back to 1947 as independent and adequate

3   procedural bar to federal review); Poland, 169 F.3d at 583-85 (state

4   rule adequate when "consistently and regularly followed").

5        The burden therefore shifts to Petitioner to prove that the

6   Duvall rules were not firmly established and regularly followed at

7   the time the California Supreme Court denied his petition.  Bennett,

8   322 F.3d at 585-86.  Petitioner fails to make any arguments in this

9   respect, much less support his burden with "specific factual

10  allegations." Id.  Moreover, the Court's independent review of the

11  law found no support for such an argument.  Petitioner thus fails to

12  show that the state supreme court's citation to Duvall and Swain

13  constituted anything but an adequate ground upon which to deny his

14  claims.

15       The California Supreme Court also must have "actually relied"

16  on the Duvall/Swain rule in its denial of Petitioner's petition.

17  Valerio, 306 F.3d at 773.  As Duvall and Swain were the only cases

18  cited and both provide the same rationale, the supreme court

19  necessarily and actually relied on that holding.

20       For the above reasons, the California Supreme Court's

21  citation to Duvall and Swain constituted "actual reliance" on an

22  "independent and adequate" procedural rule.  Petitioner's claims are

23  therefore procedurally defaulted.

                    **2.**   **As Petitioner Neither Suffered Cause and Prejudice, Nor**
24                           **Argues Actual Innocence, His Claims are Procedurally**
25                           **Defaulted**

26       To overcome procedural default, Petitioner must demonstrate

27  either cause for his default and prejudice resulting from the

28  alleged constitutional violations, or that he is actually innocent,

such that a failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750 (standard based on "the important interest in finality" served by state procedural rules and the "significant harm ... that results from the failure of federal courts to respect them"); Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998). Petitioner does not meet this burden.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him," Coleman, 501 U.S. at 753 (emphasis in original), while prejudice is that resulting from the alleged constitutional errors, id. at 750. Unless a petitioner demonstrates excusable cause for his procedural default, a reviewing federal court need not reach the question of prejudice. Engle v. Isaac, 456 U.S. 107, 134 (1982); Smith v. Baldwin, 510 F.3d 1127, 1147 (9th Cir. 2007). Petitioner must therefore make an initial showing that external factors caused his failures to plead with particularity and support his claims with documentary evidence.

In the instant case, Petitioner does not identify any factors, external or otherwise, that caused him to fail to plead his state claims with particularity. Pet.; Traverse. Rather, Petitioner merely reargues his allegations that his constitutional rights were violated. Id. The Court's own review of the lodgments and pleadings does not reveal any external factors that caused Petitioner's failure to plead with particularity. Accordingly, Petitioner has not established cause for his procedural default. See Murray v. Carrier, 477 U.S. at 488; Davis v. Woodford, 384 F.3d 628 (9th Cir. 2004) (petitioner must offer explanation for

1   procedural default).  Because Petitioner has not established cause,

2   the Court need not address the question of prejudice.  <u>Engle</u>, 456

3   U.S. at 134; <u>Smith</u>, 510 F.3d at 1147.

4        The Court, therefore, may only reach the merits of

5   Petitioner's habeas claims if, "in light of new evidence, 'it is

6   more likely than not that no reasonable juror would have found

7   petitioner guilty beyond a reasonable doubt,'" and whose continued

8   incarceration would therefore constitute a "miscarriage of justice."

9   <u>House v. Bell</u>, 547 U.S. 518, 519, 536 (2006)(citing <u>Schlup v. Delo</u>,

10   513 U.S. 298, 324, 327 (1995)).  Petitioner has presented no such

11   evidence here, nor does he argue that he is actually innocent of the

12   crimes of which he was convicted.  The miscarriage of justice

13   exception to procedural default is therefore inapplicable to this

14   case.

15        In sum, <u>Duvall</u> and <u>Swain</u> provide independent and adequate

16   state procedural grounds for the California Supreme Court's denial

17   of Petitioner's claims.  As Petitioner neither demonstrates cause

18   for his procedural default, nor contends actual innocence, a

19   reviewing federal court may not look beyond the default to the

20   merits of the petition.  Accordingly, this Court **RECOMMENDS** denying

21   Petitioner's claim on this ground.

22   **C.**      **<u>Sixth Amendment Right to Counsel</u>**

23        Respondent's final argument is that the Petition should be

24   denied on the merits because Petitioner does not have a federal

25   right to counsel of his choice.  Answer at 9-14.

26        Petitioner argues that the trial court violated his due

27   process and Sixth Amendment rights by (1) permitting his court-

28   appointed attorney to represent him even though Petitioner had not

1   signed a written consent, (2) not continuing the preliminary hearing

2   and trial in order to permit Petitioner to retain counsel of his

3   choice, and (3) not appointing a new lawyer to represent Petitioner

4   due to the inherent conflict and/or break-down in communication

5   between Petitioner and his lawyer.  Pet. at 6-8; Traverse at 2-6.

6       To the extent Petitioner presented these arguments or this

7   claim to a state court, he did so in his habeas petition to the

8   California Supreme Court.  Lodgment 3.  Because that court summarily

9   denied the petition (Lodgment 4) and Petitioner did not present the

10  argument to any other court, this Court must conduct a de novo

11  review.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002)

12  (independent review appropriate when state court reaches merits of

13  a specific claim without providing reasoning).

14          **1.   <u>Facts Pertaining to Legal Representation</u>**

15      On March 10, 2006, Petitioner appeared in court, was

16  arraigned on the charges filed against him, and requested appointed

17  counsel.  Lodgment 1 at 92 (amended minute order).  The judge

18  granted Petitioner's request and appointed the public defender to

19  represent him.  <u>Id.</u>  The court scheduled the preliminary hearing

20  for March 22, 2006.  <u>Id.</u>  On March 22, 2006, the public defender

21  notified the court of a conflict of interest in representing

22  Petitioner.  Lodgment 1 at 94 (minute order).  The Court appointed

23  an attorney from the Private Conflicts Counsel ("PCC"), set a

24  readiness hearing for April 3, and a preliminary examination for

25  April 5.  <u>Id.</u>

26      On April 3, 2006, Petitioner advised the court that he wanted

27  a new attorney.  Lodgment 1 at 95; Pet. at 9-12.  The judge excused

28  government counsel and the public and conducted an *in camera* hearing

with Petitioner and his lawyer.  *Id.*  Petitioner told the court that he did not have an individual objection to PCC attorney, Gary Edwards, or to the representation provided by Mr. Edwards, stating "[i]t's nothing personal.  It's just the position he's in.  He is appointed by the courts."  Pet. at 10-11.  Petitioner explained that "any court-appointed attorney will be an automatic conflict of interest because of obligation to the court come before representing me fully as a client in my constitutional rights."  Pet. at 10.  The judge explained to Petitioner that all non-retained lawyers are appointed and paid for by the courts.  *Id.* at 11.  Petitioner responded that he wanted to hire a lawyer but admitted that he had not taken any specific action to do so.  *Id.*  Based upon this exchange, the court confirmed the preliminary hearing date but stated that Petitioner could hire an attorney if he desired to do so.  *Id.* at 12.

On April 5, 2006, Petitioner's lawyer advised the judge that Petitioner wanted to address the court and request another attorney.  Lodgment 5 at 1.  Petitioner apparently provided the court with a written request for a two-week extension of the preliminary hearing.  *Id.* at 2.  Petitioner explained to the judge that he wanted to hire an attorney but admitted that he still had not taken any concrete actions to do so.  *Id.* at 2-3.  Based upon this record and the April 3 hearing, the judge denied Petitioner's request for a continuance and stated that the preliminary hearing would proceed that day and the PCC attorney would represent Petitioner.  *Id.* at 3-4.  Petitioner vehemently objected, citing the denial of his constitutional rights.  *Id.* at 4.  The judge began the plea colloquy with Petitioner's co-defendant, Gakarla Poole.  *Id.* at 5.  A few

minutes later, Petitioner became verbally abusive and repeatedly demanded to be removed from the courtroom.  Id. at 6-7.  The judge ordered the deputies to gag Petitioner.  Id. at 7.

After accepting Ms. Poole's guilty plea, the judge ordered Petitioner returned to the courtroom.[3]  Id. at 12.  The judge explained to Petitioner that he had a right to be present during the preliminary hearing but that the right can be forfeited by inappropriate conduct, such as the conduct Petitioner previously displayed.  Id.  Using inflammatory and abusive language, Petitioner told the judge that the judge was violating Petitioner's rights by forcing him to be represented by his PCC lawyer and demanded to be removed from the courtroom.  Id. at 12-13.  The judge instructed the bailiff to remove Petitioner and proceeded with the preliminary hearing without him.  Id. at 13.  At the conclusion of the hearing, the court found probable cause to believe that Petitioner committed the offenses charged in the complaint.  Id. at 30.

On June 8, 2006, Petitioner appeared before a new judge for trial.  Lodgment 6.  At the beginning of the proceeding, Petitioner told the judge that he had filed a motion and wanted to dismiss his PCC attorney and "be referred to the indigent panel."  Id. at 54-56.  The judge excluded the prosecutor and conducted another in camera hearing with Petitioner and his attorney.  Id. at 56.  Petitioner explained that he did not want to be represented by the PCC lawyer because he is court-appointed so his loyalty is to the government,

---

[3]   The record does not indicate whether Petitioner actually was removed from the courtroom.  The judge instructed the deputies to gag Petitioner after Petitioner repeatedly swore at the judge.  Lodgment 5 at 7.  However, the judge did not order Petitioner removed from the courtroom and Petitioner made a comment during his co-defendant's guilty plea.  Id.  After the guilty plea, however, the judge told Petitioner that he had Petitioner "brought back" for an additional discussion.  Id. at 12.

1  rather than to Petitioner, and because he has not discussed
2  Petitioner's case with him.  Id.  57-58.  Gary Edwards, the PCC
3  lawyer responded that Petitioner had threatened him during the
4  preliminary hearing and had refused to meet with him, talk to him,
5  or return his phone calls after the hearing.  Id. at 58-60.
6  However, Mr. Edwards confirmed that he was familiar with the facts
7  of the case and ready to proceed with trial.  Id. at 59.  The judge
8  then clarified with Petitioner that Petitioner's real dispute was
9  with *any* lawyer appointed by the court and paid by the government,
10 rather than the individual PCC lawyer, and that he was not objecting
11 specifically to representation by Mr. Edwards.  Id. at 61.  In
12 response, the judge carefully explained the criminal defense system
13 to Petitioner and attempted to find a solution to Petitioner's
14 representation concerns, which would permit the case to proceed to
15 resolution.  Id. at 61-68.  Petitioner again became verbally abusive
16 and demanded to be removed from the courtroom.  Id. at 65-69.  The
17 judge advised Petitioner that he could be removed from the courtroom
18 if he so desired, but the trial would proceed without him.  Id. at
19 68-69.  Finally, the judge asked Petitioner if he "would like to be
20 present?" and Petitioner replied "No, I won't be present.  I am not
21 going to be represented by this PCC man."  Id. at 69.  The judge
22 then directed that Petitioner be removed from the courtroom and
23 proceeded with the hearing.  Id. at 69-70.

24      In an abundance of caution, the court arranged to have
25 Petitioner returned to the courtroom prior to the commencement of
26 trial to verify whether he wished to be present for the trial, but
27 Petitioner refused to exit the holding cell.  Id. at 81-85.  After
28 some discussion, the judge decided to ask the bailiffs to forcibly

1  transport Petitioner to court so the judge could again advise
2  Petitioner of his constitutional rights, including the right to be
3  present during his trial. Id. at 85-88. Petitioner apparently then
4  decided to return to court voluntarily. Id. at 88. The judge
5  advised Petitioner that he had the right to be present for his jury
6  trial and to be dressed in non-jail clothing, but that he would have
7  to conduct himself in a respectful manner. Id. at 90-92.
8  Petitioner refused to answer any of the judge's questions but, in
9  response to the question of whether he wished to talk to his
10 attorney, Petitioner "flipped his attorney the bird." Id. at 92-94.
11 The trial then proceeded without Petitioner's presence. Lodgments
12 7-8.

13         **2.   Written Consent**

14         Petitioner's first argument is that the court violated his
15 rights by forcing him to be represented by an appointed attorney
16 when Petitioner had  not provided written consent for the
17 representation. Pet. at 6. In support of his argument, Petitioner
18 cites to the Rules of Professional Conduct of the California State
19 Bar. Id. This argument is not cognizable on federal review.

20         When conducting habeas review, a federal court is limited to
21 "deciding whether a conviction violated the Constitution, laws or
22 treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68
23 (1991); 28 U.S.C. § 2254 (§ 2254 habeas review only available "on
24 the ground that [a petitioner] is in custody in violation of the
25 Constitution or laws or treaties of the United States"). Habeas
26 relief is not available for an alleged error in the interpretation
27 or application of state law. Estelle, 502 U.S. at 67-69. This
28 Court is therefore precluded from considering Petitioner's claim

arising from an alleged violation of the California Rules of Professional Conduct.[4]  See Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006) (contention that state court violated state law by failing to inform petitioner of probation term is not cognizable on federal review); Beaty v. Stewart, 303 F.3d 975, 986 (9th Cir. 2002) (claim that state court improperly applied state sentencing law not federally cognizable).

### 3.   Right To Counsel of Choice

Petitioner's next argument is that his constitutional rights were violated because he was denied his right to be represented by an attorney of his choice.  Pet. at 6-8; Traverse at 2-5.

The Sixth Amendment guarantees a criminal defendant the right to be represented by effective trial counsel.  See, e.g., Powell v. Alabama, 287 U.S. 45 (1932); Strickland v. Washington, 466 U.S. 668 (1984).  As part of this right, a defendant has a qualified right to choose his preferred trial counsel.  Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989).  If, however, a defendant does not have the financial ability to hire an attorney and therefore requires the appointment of counsel, the defendant does not have a right to be represented by *appointed* counsel of his choice.  Id. ("[A] defendant may not insist on representation by an attorney he cannot afford.") (quoting Wheat v. United States, 486 U.S. 153, 159 (1988)); United States v. Gonzalez-Lopez, 548 U.S.

---

[4]  To the extent that Petitioner may be trying to argue that the lack of written consent violates his Sixth Amendment or other constitutional rights, he fails to provide any legal support for his argument.  Moreover, the Court is not aware of any constitutional provision or clearly established Federal law requiring a criminal defendant to agree in writing to his legal representation.  Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 653 (2006) (AEDPA requires an analysis of whether the state court's ruling was contrary to, or an unreasonable application of, a decision of the United States Supreme Court).

1   140, 151 (2006) ("[T]he right to counsel of choice does not extend
2   to defendants who require counsel to be appointed for them.").
3   Similarly, while a defendant has a right to be represented by
4   competent counsel, he does not have a right to a "meaningful
5   attorney-client relationship." Morris v. Slappy, 461 U.S. 1, 13
6   (1983).

7        Here, the record reflects that Petitioner did not hire an
8   attorney, did not seek to substitute in a retained attorney, and did
9   not indicate that he had the financial ability to hire his own
10  lawyer. Pet. at 9-12; Lodgment 5 at 1-13; Lodgment 6 at 54-70.
11  Rather, Petitioner repeatedly objected to the appointed attorney and
12  demanded a new free attorney. Id. Because there is no evidence
13  that Petitioner had the financial resources to retain a lawyer or
14  that he had identified a lawyer who was willing to represent him,
15  Petitioner required the appointment of counsel and therefore did not
16  have the right to choose his lawyer. Caplin & Drysdale, 491 U.S. at
17  624; see also Gonzalez v. Knowles, 515 F.3d 1006, 1013 (9th Cir.
18  2008) (no violation of right to counsel where trial court declined
19  to appoint attorney requested by defendant and who was available and
20  willing to represent defendant). Accordingly, the trial judge did
21  not violate Petitioner's constitutional rights by rejecting his
22  request to dictate the attorney to be provided to him at the
23  government's expense.

24       Petitioner also argues that the trial court violated his
25  constitutional rights by denying his request to continue the
26  preliminary hearing and trial in order to provide him additional

27

28

1   time to obtain counsel.[5]   The United States Supreme Court recently

2   reiterated that a trial court retains "wide latitude in balancing

3   the right to counsel of choice against the needs of fairness, and

4   against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at

5   152; see also Miller v. Blacketter, 525 F.3d 890, 895 (9th Cir.

6   2008).   "As such, trial courts retain the discretion to 'make

7   scheduling and other decisions that effectively exclude a

8   defendant's first choice of counsel.'" Miller, 525 F.3d at 895,

9   quoting Gonzalez-Lopez, 548 U.S. at 152.

10       In evaluating a similar habeas claim, the Ninth Circuit

11  considered three factors: whether the defendant had retained new

12  counsel, whether current counsel was prepared and competent to

13  proceed forward, and the timing of defendant's request to continue.

14  Miller, 525 F.3d at 896-98.   In Miller, the court denied a habeas

15  petition alleging a violation of the right to counsel where the

16  petitioner requested the continuance the morning that trial was

17  scheduled to begin, petitioner had not yet retained a lawyer, and

18  his appointed lawyer was prepared to represent him.   Id.   The same

19  analysis dictates the same result in this case.

20       In the instant case, as in Miller, Petitioner had not

21  retained new counsel at the time he requested the continuances.

22  During the hearing on April 3, 2006, Petitioner told the judge that

23  he had not taken any affirmative action to retain a lawyer and that

24  he was requesting the continuance so that he could continue to look

25

26       [5]   While the record does not establish that Petitioner requested a
    continuance of his trial to obtain a new lawyer, it does reflect that he
27  allegedly submitted a written request and that he wanted a new lawyer.   Lodgment
    6 at 54-56.   Because he did not identify a specific lawyer who was ready to
28  proceed, a new lawyer, whether appointed or retained, would require a continuance
    of the trial.

into the possibility of hiring an attorney. Lodgment 1 at 95; Pet. at 11. Petitioner confirmed these facts on April 5, 2006, when he again requested a continuance before the start of the preliminary hearing. Lodgment 5 at 1-4. And, on the morning of trial, Petitioner requested a referral to the "indigent panel," indicating that he still had not retained a lawyer. Lodgment 6 at 54-56. Accordingly, there is no evidence that Petitioner had hired a new attorney who was willing and able to proceed with the hearing or trial.

Similarly, in both the instant case and <u>Miller</u>, the existing, appointed lawyer was ready and able to represent the defendant. Although Petitioner argued that his lawyer was not prepared to represent him[6] (Lodgment 6 at 57-58), the appointed lawyer explained their relationship and his preparation and stated that he was prepared to represent Petitioner at trial (<u>id.</u> at 58-60). Further, Petitioner repeatedly told the judge that he did not have an objection to the individual lawyer appointed to represent him or any specific aspect of his representation; rather, he stated that his objection was to any court-appointed lawyer because there was an "automatic conflict of interest" when the government that is prosecuting him also is paying his lawyer. Pet. at 10-12; Lodgment 5 at 1-4; Lodgment 6 at 57-58, 61.

Finally, Petitioner requested the continuances two days before the preliminary hearing, the morning of the preliminary hearing, and the morning of trial. Pet. at 9-12; Lodgments 5 and 6. Significantly, Petitioner had approximately two months between the

---

[6] Notably, Petitioner is not alleging ineffective assistance of counsel in his federal habeas petition. Pet.; Traverse.

1    preliminary hearing and the trial and yet he did not retain a

2    lawyer.   Rather, he waited until the morning of trial to again

3    request new counsel.   Lodgement 6 at 54-56.   Petitioner does not

4    provide any justification for the timing of his requests, other than

5    to reiterate his erroneous belief that there is an inherent conflict

6    with any court-appointed attorney representation and that he

7    therefore has a right to a new, free attorney obtained from some

8    other source.   Lodgments 5 and 6.   Accordingly, Petitioner has not

9    provided any justification for his late requests.   Miller, 525 F.3d

10   at 897-98 (court properly considers timing of request and the

11   justification, if any, for a late request).

12        "[O]nly [a trial court's] unreasonable and arbitrary

13   'insistence upon expeditiousness in the face of a justifiable

14   request for delay violates the Sixth Amendment." Miller, 525 F.3d

15   at 897, quoting Morris, 461 U.S. at 11-12.   Given all of the facts

16   of this case, the Court finds that the judges' decisions to deny

17   Petitioner's requests to continue the hearings and trial were

18   neither arbitrary nor unreasonable, that Petitioner's requests were

19   not justifiable, and that the judges did not abuse their discretion

20   by denying Petitioner's requests to continue the preliminary hearing

21   and trial.   Morris, 461 U.S. at 12-14 (defendant's Sixth Amendment

22   rights not violated when trial court refused to continue trial to

23   permit defendant's preferred public defender to represent him);

24   Miller, 525 F.3d at 895-98 (no violation of right to counsel where

25   trial court denied continuance requested morning of trial and new

26   counsel had not yet been retained); Bradley v. Henry, 510 F.3d 1093,

27   1100 (9th Cir. 2007) (trial court "may deny motion to substitute

28   retained counsel if there is a substantial risk that the delay will

1  result in an undue delay of the proceedings").

2      **3.   <u>Alleged Conflict with Counsel</u>**

3      Finally, Petitioner argues that the trial court violated his

4  constitutional rights by refusing to appoint a new attorney to

5  represent him when there was an inherent conflict and/or an

6  "apparent lack of communication" between Petitioner and his

7  appointed attorney.  Pet. at 6-8.

8      The Sixth Amendment provides a defendant with the right to be

9  represented by an attorney who does not have an actual conflict of

10  interest.  <u>See</u> <u>Holloway v. Arkansas</u>, 435 U.S. 475, 483-84 (1978)

11  (representation by one attorney of several defendants violates the

12  Sixth Amendment if it presents an actual conflict of interest).  If

13  a defendant raises an actual conflict issue, or the judge knows or

14  reasonably should know of such a conflict, the judge has a duty to

15  inquire into the details of the conflict.  <u>Lockhart v. Terhune</u>, 250

16  F.3d 1223, 1229-30 (9th Cir. 2001) (summarizing Supreme Court

17  decisions).  Similarly, if a defendant requests a new attorney on

18  the grounds that he has a conflict with his attorney that prevents

19  him from receiving his constitutionally-protected representation,

20  the Sixth Amendment requires that the trial court conduct an

21  "appropriate inquiry" into the allegations before the case proceeds.

22  <u>Schell v. Witek</u>, 218 F.3d 1017, 1025 (9th Cir. 2000); <u>Plumlee v.</u>

23  <u>Masto</u>, 512 F.3d 1204, 1211 (9th Cir. 2008) (same).

24      Here, Petitioner has not established that his lawyer had an

25  actual conflict of interest.  Counsel did not represent more than

26  one defendant and there is no evidence that counsel previously

27  represented another client whose representation conflicted with his

28  representation of Petitioner.  Similarly, there is no evidence that

1   any aspect of the individual lawyer created an actual conflict.

2   Plumlee, 512 F.3d at 1210 (issue is whether there is an actual,

3   legal conflict).  Moreover, Petitioner repeatedly advised the court

4   that the alleged conflict was not an actual one involving his

5   individual attorney, but one inherent in a system where the court

6   selects and appoints the defense lawyer and government money pays

7   the salaries of both prosecutors and defense lawyers.  Pet. at 9-12;

8   Lodgments 5 and 6.

9        To the extent that Petitioner is arguing that his distrust of

10  his attorney created a conflict requiring the appointment of new

11  counsel, the law does not support his argument.  In Morris, 461 U.S.

12  at 13-14, the Supreme Court held that the Sixth Amendment did not

13  guarantee "a meaningful relationship between an accused and his

14  counsel."  In interpreting this holding, the Ninth Circuit recently

15  rejected a similar habeas petitioner's argument, finding no

16  constitutional violation where the Petitioner was "represented by a

17  lawyer free of actual conflicts of interest, but with whom the

18  defendant refuses to cooperate because of dislike or distrust."

19  Plumlee, 512 F.3d at 1211.  Accordingly, Petitioner's argument that

20  he was entitled to a new attorney because he did not trust his

21  appointed lawyer due to the manner in which he was appointed and

22  paid does not constitute a violation of the Sixth Amendment or any

23  other constitutional right.

24       Finally, the court did conduct appropriate inquiries into

25  Petitioner's conflict allegations.  In both April and June of 2006,

26  when Petitioner raised this issue, the presiding judge immediately

27  excluded the prosecutor and conducted an *in camera*, *ex parte* inquiry

28  into Petitioner's allegations.  Pet. at 9-12; Lodgment 6 at 54-69.

1   The judges specifically asked Petitioner whether he objected to the

2   actual representation that he was receiving from his appointed

3   lawyer.  Pet. at 10-11; Lodgment 6 at 58-61.  In April, Petitioner

4   confirmed that the alleged conflict involved any lawyer appointed

5   and paid by the government, and not the individual appointed PCC

6   lawyer.  Pet. at 10-11.  In June, the judge solicited Petitioner's

7   complaints against the individual lawyer and permitted the lawyer to

8   explain his conduct.  Lodgment 6 at 58-60.  The judge then opined

9   that Petitioner's real dispute appeared to be with any lawyer

10   appointed and paid by the government, and not the conduct of his

11   currently-appointed lawyer.  Id. at 60-61.  Petitioner confirmed

12   that the court's opinion was correct.  Id. at 61.  Once the trial

13   judge determined that Petitioner's alleged conflict was one inherent

14   in the system, that Petitioner objected to being represented by an

15   attorney who is paid by the same government that was prosecuting

16   him, the judge expended considerable time and effort to explain the

17   system to Petitioner and to assure him that the system could provide

18   him with competent counsel and that there was not an inherent

19   conflict.  Id. at 61-68.

20       However, Petitioner rebuffed the judge's efforts, became

21   verbally abusive, and demanded to be removed from the courtroom.

22   Id. at 65-69.  Accordingly, the record establishes that the state

23   court judges complied with the law by considering Petitioner's

24   conflict claims, conducting an immediate and appropriate inquiry,

25   and properly determining that there was no conflict in counsel's

26   representation of Petitioner that required the appointment of a new

27   lawyer.  King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992) (no

28   constitutional violation where trial court briefly inquired into

1   basis for request for appointment of counsel and then denied it).

2       For the reasons set forth above, the Court finds that the

3   California Supreme Court's denial of Petitioner's claim that his

4   constitutional right to counsel of choice was violated was not

5   contrary to, or an unreasonable application of, clearly established

6   Federal law.   This Court therefore **RECOMMENDS** that Petitioner's

7   claim for habeas relief be **DENIED.**

8                   <u>**CONCLUSION AND RECOMMENDATION**</u>

9       In sum, this Court finds that Petitioner has failed to

10  present any evidence suggesting that the California Supreme Court's

11  decision was contrary to, or an unreasonable application of, clearly

12  established federal law.   <u>See</u> 28 U.S.C. § 2254(d).   Nor has

13  Petitioner made any supported argument that further factual

14  development is necessary, such that an evidentiary hearing would be

15  warranted.   <u>See</u> 28 U.S.C. § 2254(e)(2) (exceptions where an

16  evidentiary hearing may be appropriate).   As such, this Court

17  **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be

18  **DENIED** and the case dismissed with prejudice.

19      For all the foregoing reasons, **IT IS RECOMMENDED** that the

20  District Court issue an Order: (1) approving and adopting this

21  Report and Recommendation and (2) directing that Judgment be entered

22  denying the Petition.

23      **IT IS HEREBY ORDERED** that any written objections to this

24  Report must be filed with the Court and served on all parties **no**

25  **later than** <u>**August 15, 2008.**</u>   The document should be captioned

26  "Objections to Report and Recommendation."

27      **IT IS FURTHER ORDERED** that any reply to the objections shall

28  be filed with the Court and served on all parties **no later than**

**September 5, 2008.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).


DATED:  July 25, 2008


_Barbara L. Major_

BARBARA L. MAJOR
United States Magistrate Judge


COPY TO:

HONORABLE IRMA E. GONZALEZ
UNITED STATES DISTRICT JUDGE

ALL COUNSEL